UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


Peter E. Gibbs, Jr.

  v.            Civil No. 17-cv-299-PB

N.H. State Prison Warden
Michael Zenk et al.[1]


**REPORT AND RECOMMENDATION**

  Peter E. Gibbs, Jr., a New Hampshire Department of Corrections ("DOC") inmate currently housed in a prison in the State of Washington, has filed this action asserting that his transfer to that facility is unconstitutional.  Before the court are defendants' motion to dismiss (Doc. No. 14), defendants' supplemental motion to dismiss (Doc. No. 28), and plaintiff's motions for injunctive relief (Doc. Nos. 18, 21), see Apr. 17, 2018 Order.  The motions for injunctive relief have also been construed as complaint addenda, see Apr. 19, 2018 Order, and are

---

[1] Plaintiff has named, as defendants to this action: (former) New Hampshire State Prison ("NHSP") Warden Michael Zenk, (former) New Hampshire Department of Corrections ("DOC") Director of Classifications Kim Lacasse, DOC Director of Security Christopher Kench, (former) DOC Commissioner William Wrenn, DOC Director of Classifications FNU Provencher, and (former) NHSP Warden Richard Gerry.

before this court for preliminary review under LR 4.3(d)(1) and 28 U.S.C. § 1915A.

## Background

Gibbs's claims in this lawsuit relate to his transfer to a prison in Maine in 2011 and a prison in Washington in 2016, and to the conditions of his confinement in Washington. Gibbs first asserts that, sometime prior to 2007, a group of New Hampshire State Prison ("NHSP") guards beat him up after he told the press that he thought the NHSP was improperly producing New England Patriots commemorative license plates. Gibbs claims here that he was shipped out-of-state in 2011 and 2016 in retaliation for speaking out about the license plates in 2007.[2]

Gibbs further alleges that at some point prior to November 2011, a group of corrections officers planted knives in cells in the NHSP Special Housing Unit ("SHU"), assaulted SHU inmates, and created false disciplinary reports against Gibbs and other inmates. Gibbs asserts that the State Police and New Hampshire

---

[2]In 2005, Gibbs, through counsel, filed a lawsuit in which he alleged that corrections officers assaulted Gibbs in retaliation for speaking about the allegedly improper production of New England Patriots license plates. See Gibbs v. Daniels, No. 05-cv-359-SM (D.N.H.). That case settled in 2007. See id., Sept. 24, 2007 Stip. of Dismissal (ECF No. 36).

Attorney General's Office ("AG") investigated that misconduct, and that the State paid money to settle the claims of some of those inmates. Gibbs alleges that he was not a plaintiff in those inmate lawsuits, and that he did not receive any money from the settlements.[3] Gibbs asserts that, knowing that corrections officers had engaged in misconduct, and seeking to cover up those officers' misconduct by sending Gibbs out of state, defendants, former NHSP Warden Michael Zenk, former NHSP Warden Richard Gerry, former DOC Commissioner William Wrenn, DOC Director of Security Christopher Kench, former DOC Director of Classifications Kim Lacasse, and Lacasse's successor, Ms. Provencher, at the direction of the AG, arranged for Gibbs's

---

[3] Saulnier v. Bettez, 1:10-cv-00423-SM (D.N.H., filed Sept. 22, 2010), Boothby v. Jorgensen, No. 1:10-cv-00424-JL (D.N.H., filed Sept. 22, 2010), Ford v. Bettez, No. 1:10-cv-00444-SM (D.N.H., filed Oct. 1, 2010), and Lawlor v. Bettez, No. 1:10-cv-00445-JL (D.N.H., filed Oct. 1, 2010), appear to be the cases to which Gibbs refers. Saulnier's and Lawlor's cases settled in 2012. See Saulnier, Apr. 17, 2012 Stip. for Dismissal (ECF No. 27); Lawlor, Nov. 27, 2012 Assented-to Mot. to Dismiss (ECF No. 38). Ford through counsel filed a notice of voluntary dismissal in December 2011, without prejudice to his ability to refile claims in state court. See Ford, Dec. 12, 2011 Assented-to Mot. to Dismiss without Prej. (ECF No. 44). Boothby went to trial on some of his claims, and the jury returned a defendants' verdict in 2012. See Boothby, June 14, 2012 Jury Verdict (ECF No. 71); June 8, 2012 Assented-to Mot. to Dismiss Duffy & O'Brien (ECF No. 63).

transfer to a Maine prison in 2011, and then to a Washington prison in 2016.

Gibbs further asserts that the conditions of his confinement in Washington violate his rights. He has asserted that he is not safe in the Washington prison,[4] and that he lacks access to New Hampshire law books, legal assistance, and proper medical care. Gibbs further asserts that the Washington prison system requires him to pay into a fund for Washington crime victims, and to pay for the cost of his incarceration, even though, he asserts, New Hampshire pays Washington to house him, and he has never been convicted of any offense in Washington.

The November 13, 2017 Order (Doc. No. 13) in this case directed service of the original complaint upon defendants. Defendants filed a motion to dismiss, see Doc. No. 14, and a supplemental motion to dismiss, see Doc. No. 28. Plaintiff, in

---

[4]In the Complaint (Doc. No. 1), filed in July 2017, Gibbs expressed a fear that he could be a target of life-threatening violence in the Washington prison, saying, "I could be killed in this out of state prison," and that New Hampshire DOC officials were "allowing [Gibbs] to be a victim." Id. at 2-3, 11. Gibbs did not further clarify why he feared for his safety, and his motions seeking a transfer back to New Hampshire (Doc. Nos. 18, 21) have not repeated that Gibbs is concerned about a risk of violence in the Washington prison. Nothing in this Report and Recommendation is intended to prevent Gibbs from pursuing claims relating to his personal safety in a Washington court.

turn, filed a pair of motions for injunctive relief (Doc. Nos. 18, 21), asserting new facts relating to his claims, which have been referred for a Report and Recommendation ("R&R"), see Apr. 17, 2018 Order.  Those motions, construed as complaint addenda, are also here for preliminary review to identify Gibbs's claims asserted therein, and to determine if those claims may proceed. See 28 U.S.C. § 1915A; 28 U.S.C. § 1915(e)(2); LR 4.3(d)(1).

## Claims

In the complaint (Doc. No. 1) and complaint addenda (Doc. Nos. 18, 21), Gibbs asserts the following claims seeking damages and/or injunctive relief under 42 U.S.C. § 1983:

1.  Defendants transferred Gibbs to a prison in Maine, in November 2011:

    a.  In retaliation for Gibbs's exercise of his First Amendment rights, relating to statements Gibbs made to the media and his litigation of a civil rights case from 2005-2007;

    b.  In a manner limiting Gibbs's access to his family, in violation of Gibbs's freedom of association under the First and Fourteenth Amendments; and

    c.  In a manner preventing Gibbs from filing lawsuits regarding official misconduct that occurred prior to November 2011, in violation of Gibbs's right of access to the courts under the First Amendment.

2.  Defendants transferred Gibbs to a prison in Washington in April 2016:

    a.    In retaliation for Gibbs's exercise of his First Amendment rights, relating to statements Gibbs made to the media and his litigation of a civil rights case from 2005-2007:

    b.    In a manner limiting Gibbs's access to his family, in violation of Gibbs's freedom of association under the First and Fourteenth Amendments; and

    c.    In a manner preventing Gibbs from filing lawsuits regarding official misconduct that occurred prior to November 2011, in violation of Gibbs's right of access to the courts under the First Amendment.

3.    The conditions of Gibbs's confinement in Washington violate Gibbs's federal rights, as Gibbs:

    a.    Lacks protection from threats to his safety, in violation of his Eighth Amendment rights;

    b.    Lacks access to medical care, in violation of his Eighth Amendment rights; and

    c.    Has suffered a deprivation of funds from his inmate account, without due process, in violation of his Fourteenth Amendment rights, as those funds are diverted to pay into a fund for Washington crime victims and to pay for his incarceration, although he has not been convicted of any crime in Washington, and New Hampshire pays Washington to incarcerate him.

## Discussion

I.    <u>Preliminary Review</u>[5]

    A.    <u>Retaliatory Transfers (Claims 1(a) and 2(a))</u>

---

[5]The court applies the preliminary review standard applied in the November 13, 2017 Order (Doc. No. 8), to this court's preliminary review of the amended pleadings.

6

Plaintiff asserts that his transfers to Maine in 2011 and to Washington in 2016 were taken to retaliate against him for his exercise of First Amendment rights in 2005-2007 relating to the prison's production of New England Patriots license plates. To state a First Amendment retaliation claim, an inmate must allege: (1) that the conduct which led to the retaliation was protected by the First Amendment; (2) that she or he suffered a non-de minimis adverse action at the hands of the prison officials; and (3) that there was a causal link between the exercise of her or his First Amendment rights and the adverse action taken. See Hannon v. Beard, 645 F.3d 45, 48 (1st Cir. 2011). An adverse act taken in response to protected conduct is de minimis if it would not deter an individual of ordinary firmness from exercising his or her First Amendment rights. See Starr v. Dube, 334 F. App'x 341, 342-43 (1st Cir. 2009).

The allegations in the complaint suggesting causation are remote in time, separated from the events at issue by more than four years. Without more, the fact that Gibbs was transferred at some point after the pertinent exercise of his First Amendment rights does not give rise to a reasonable inference of a causal connection between Gibbs's exercise of his First Amendment rights. See, e.g., Keeling v. Barrager, 666 F. App'x

153, 155 (3d Cir. 2016) (officer's allegedly retaliatory transfer of prisoner to a different cellblock thirteen months after prisoner filed a lawsuit against the officer, without more, "too remote in time to infer an unlawful motive"); Schmitt v. Rice, 421 F. App'x 858, 862-63 (10th Cir. 2011) (false disciplinary report filed three years after prisoner's successful litigation challenging disciplinary convictions, without more, too remote in time create inference of causation necessary to support retaliation claim).  Accordingly, the district judge should dismiss Claims 1(a) and 2(a).

    B.    Freedom of Association (Claims 1(b) and 2(b))

Gibbs asserts that, as a practical matter, the transfers to Maine in 2011 and to Washington in 2016 have interfered with his ability to receive visits from his mother and daughter.  Gibbs alleges that he began to complain about the effect on his family of his transfer to Maine on the date he arrived there, and that in 2013, prison officials received letters regarding his mother's inability and his daughter's reduced ability to visit him outside of New Hampshire.  This court has construed Gibbs's complaint as asserting that the transfers deprived Gibbs of his right to associate with his family, in a manner violating the

8

Fourteenth Amendment Due Process Clause and the First Amendment.

An inmate does not have a liberty interest in unfettered visitation that is protected by the Constitution. Ky. Dep't of Corrs. v. Thompson, 490 U.S. 454, 460 (1989). Further, an inmate "has no justifiable expectation that he will be incarcerated in any particular State." Olim v. Wakinekona, 461 U.S. 238, 245 (1983). The Fourteenth Amendment Due Process Clause does not, in and of itself, give rise to any protected liberty interest in remaining in-state to serve a prison sentence. Id. at 248. The Supreme Court has noted that the First Amendment "freedom of association is among the rights least compatible with incarceration," and that "[s]ome curtailment of that freedom must be expected in the prison context." Overton v. Bazzetta, 539 U.S. 126, 131 (2003) (citations omitted).

A plaintiff must make two showings to succeed on a Fourteenth Amendment familial-association claim: "(1) that the defendants intended to deprive him of his protected relationship, and (2) that balancing the individual's interest in the protected familial relationship against the state's interests in its actions, defendants either unduly burdened plaintiff's protected relationship, or effected an unwarranted

9

intrusion into that relationship." Leek v. Miller, 698 F. App'x 922, 927 (10th Cir. 2017). In addition, "[t]he conduct or statement must be directed at the familial relationship with knowledge that the statements or conduct will adversely affect that relationship." Id. (citations omitted) (emphasis in original).

Gibbs has alleged that beginning on the date of his transfer to Maine, he began to complain about being transferred, but he has not pleaded any facts suggesting that prison officials who transferred him in November 2011 did so with knowledge that the transfer would adversely affect his family relationships. Accordingly, the district judge should dismiss the family association claim (Claim 1(b)) regarding the 2011 transfer to Maine.

As to the transfer to Washington in 2016, defendants' knowledge that the transfer would substantially increase the distance between Gibbs and his family members, does not, without more, demonstrate that prison officials intended to interfere with Gibbs's family relationships or that they knew that the transfer would adversely affect Gibbs's familial relationships to an extent that would give rise to an actionable claim. Gibbs has not alleged that his ability to correspond with his family

members by telephone or mail was restricted by the transfer, and nothing suggests that defendants caused any limits, apart from distance, to be placed on Gibbs's ability to receive family visits. Accordingly, the district judge should dismiss the familial association claim (Claim 2(b)) relating to the 2016 transfer to Washington, for failure to state a claim.

    C.    Right of Access to Courts (Claims 1(c) and 2(c))

The court construes the complaint and complaint addenda as asserting that the transfer violated Gibbs's right of access to the courts. To state a claim that a plaintiff's right of access to the courts has been violated, the plaintiff must allege facts showing he was actually injured in his ability to pursue a nonfrivolous claim in a post-conviction proceeding or other civil rights matter that the plaintiff had a right to litigate. See Lewis v. Casey, 518 U.S. 343, 352, 354-55 (1996). In other words, plaintiff must allege facts that, if taken as true, would show "'that an actionable claim has been lost or rejected or that presentation of the claim is currently being prevented'" due to defendants' actions. Guglielmo v. N.H. State Prison, 111 F.3d 122, 1997 WL 205290, at *1, 1997 U.S. App. LEXIS 8616, at *2-*3 (1st Cir. Apr. 25, 1997) (unpublished table decision)

(citing Lewis, 518 U.S. at 356).  "[T]he underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." Christopher v. Harbury, 536 U.S. 403, 415 (2002).

   Gibbs alleges that he was transferred from New Hampshire to Maine in 2011 to cover up misconduct that occurred prior to that transfer.  Gibbs has not pleaded facts indicating how the transfer to Maine prevented him from accessing the courts; his filing here a letter he asserts he received from inmate Scott Ford while Gibbs was incarcerated in Maine, describing the inmates' lawsuits, undermines the contention that he was unable to communicate with participants in those lawsuits.  Even assuming, without deciding, that the transfer to Maine was intended to separate Gibbs from those inmates, Gibbs has not alleged facts to suggest that his transfer to Maine prevented him from litigating any claim he may have had against any corrections officer or other prison official, while in Maine. Gibbs's assertion that he was sent to Maine as part of a cover up, without more, is entirely speculative, and does not state a claim that the transfer denied Gibbs access to the courts. Accordingly, the district judge should dismiss Gibbs's access to

the courts claim, relating to the transfer to Maine in 2011 (Claim 1(c)).

With respect to Gibbs's access to the courts claim relating to his transfer to Washington in 2016, Gibbs has alleged that the prison law library in Washington lacks New Hampshire law books, and that the lack of adequate legal resources prevents him from filing a "State appeal" and litigating his claims relating to NHSP officer misconduct. Gibbs has not pleaded any facts here, however, to state a claim that his planned state appeal is nonfrivolous, which is an element of an access to the courts claim. See Christopher, 536 U.S. at 415. Furthermore, the statute of limitations on Gibbs's claims against any prison officials, based on their conduct in 2011 or earlier, would appear to have expired several years before his 2016 transfer to Washington. See N.H. Rev. Stat. Ann. § 508:4; see also Gilbert v. City of Cambridge, 932 F.2d 51, 57 (1st Cir. 1991). Gibbs has not alleged facts to show that the transfer to Washington prevented him from filing any nonfrivolous claim. Cf. Harper v. Dinella, 589 F. App'x 67, 69 (3d Cir. 2015) (because the only discernible claims in underlying action were time-barred, inmate failed to identify any nonfrivolous claim upon which to base his access to courts claim). Accordingly, the district judge should

dismiss Gibbs's access to the courts claim relating to the Washington transfer (Claim 2(c)).

### D. Current Conditions of Confinement (Claim 3)

Gibbs has alleged that his safety is not assured at the Washington prison, and that he is unable to obtain adequate medical care at that facility. Gibbs further alleges that Washington prison officials improperly debit money from his inmate account.

Acts of third parties in Washington appear to be the immediate cause of Gibbs's current conditions of confinement. Gibbs has not alleged that the defendants here have any control over the conditions in the prison in Washington. Gibbs has not alleged facts showing that any New Hampshire defendant should be held liable for allegedly unconstitutional conduct undertaken by prison officials or medical providers in Washington.

To assert claims for damages under 42 U.S.C. § 1983, alleging that the New Hampshire defendants in this case are responsible for the conditions in the Washington prison, Gibbs must assert facts that allow the court to find that the risk of harm created by the transfer was foreseeable, and "that there was 'some direct relation between the injury asserted and the

14

injurious conduct alleged.'" Cty. of L.A. v. Mendez, 137 S. Ct. 1539, 1548-49 (2017) (citations omitted). The conditions Gibbs has highlighted are not alleged in a manner that states a claim that they were a foreseeable consequence of the transfer.

Furthermore, Gibbs has not alleged sufficient facts to state Eighth Amendment claims upon which relief could be granted, based on his assertions of unspecified threats of violence, and his lack of access to medical care in Washington, as he has not demonstrated that any prison official or medical provider has been subjectively aware of any substantial risk of serious harm to Gibbs, relating to those matters.[6] Accordingly, the claims summarized above as Claim 3 should be dismissed without prejudice to Gibbs's ability to file a new case asserting all of the facts underlying his claims against any Washington prison officials and medical providers he may identify, in a Washington court where venue may be appropriate,

---

[6] A prison official "violates an inmate's Eighth Amendment right against cruel and unusual punishment 'based on a failure to prevent harm' to the inmate only under two circumstances: 'the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm,' and the prison official must have acted, or failed to act, with "deliberate indifference to inmate health or safety." Lakin v. Barnhart, 758 F.3d 66, 70 (1st Cir. 2014) (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)).

where that court could properly exercise jurisdiction over those defendants.

II. Motions for Injunctive Relief (Doc. Nos. 18, 19)

"'A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" Glossip v. Gross, 135 S. Ct. 2726, 2736 (2015) (citation omitted). "Though each factor is important . . . '[t]he sine qua non of this four-part inquiry is likelihood of success on the merits.'" Sindicato Puertorriqueño de Trabajadores, SEIU Local 1996 v. Fortuño, 699 F.3d 1, 10 (1st Cir. 2012) (per curiam) (citation omitted). "To demonstrate likelihood of success on the merits, plaintiffs must show 'more than mere possibility' of success – rather, they must establish a 'strong likelihood' that they will ultimately prevail." Id. (citation omitted). The burden of proof is on the movant. See Esso Std. Oil Co. v. Monroig-Zayas, 445 F.3d 13, 18 (1st Cir. 2006).

For reasons explained in this Report and Recommendation ("R&R"), all of the claims in this lawsuit should be dismissed.

Accordingly, Gibbs has failed to demonstrate a likelihood of success on the merits of any claim asserted in this action.  The motions for injunctive relief (Doc. Nos. 18, 19), therefore, should be denied, without prejudice.  See Sindicato Puertorriqueño, 699 F.3d at 10.

III. Motions to Dismiss (Doc. Nos. 14, 28)

In this R&R, the undersigned magistrate judge recommends that the district judge dismiss all of the claims asserted in this lawsuit pursuant to its authority to screen prisoner complaints under 28 U.S.C. § 1915(e)(2), 28 U.S.C. § 1915A, and LR 4.3(d)(1).  Accordingly, the motions to dismiss (Doc. Nos. 14, 28) should be denied as moot, if this court approves this R&R.

## Conclusion

For the foregoing reasons, the district judge should DISMISS Claims 1 and 2 (numbered above) for failure to state a claim; DISMISS Claim 3 without prejudice to Gibbs's ability to assert claims against Washington corrections officials or medical providers, in a court in that state; DENY AS MOOT defendants' motion to dismiss and supplemental motion to dismiss

(Doc. Nos. 14, 28); and DENY plaintiffs' motions for injunctive relief (Doc. Nos. 18, 19).

Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice.  See Fed. R. Civ. P. 72(b)(2).  The fourteen day period may be extended upon motion.  Failure to file objections within the specified time waives the right to appeal the district court's order.  See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).

*/s/ Andrea K. Johnstone*
Andrea K. Johnstone
United States Magistrate Judge

June 28, 2018

cc:   Peter E. Gibbs, Jr., pro se
      Anthony Galdieri, Esq.
      Lynmarie C. Cusack, Esq.